BROWN *v.* STATE.

4360                                              184 S. W. 2d 805

Opinion delivered January 15, 1945.

*Lucien E. Coleman,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J.   Appellant, Tony Brown, prosecutes this appeal to reverse judgment of the circuit court, entered in conformity with verdict of the trial jury, sentencing him to death for the crime of murder in the first degree.

These assignments of error are argued by appellant here: (I) That the lower court erred in not directing the jury to return a verdict of "not guilty." (II) That the lower court erred in admitting in evidence confessions of appellant. (III) That the verdict of the jury was contrary to the law. (IV) That the verdict of the jury was the result of bias, prejudice and passion, and that the appellant was not afforded a fair and impartial trial.

## I.

In support of the first assignment of error appellant cites § 4018 of Pope's Digest of the laws of Arkansas, as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed. Crim. Code, § 239." Appellant urges that the requirements of this statute were not met in this case.

In construing this section, in the case of *Harshaw v. State,* 94 Ark. 343, 127 S. W. 745, this court said: "Appellant contends that the court erred in giving instruction No. 6, which told the jury that the confession of the defendant, accompanied with proof that the offense was committed by some one, will warrant defendant's conviction. This instruction is in conformity with the stat-

ute. Section 2385, Kirby's Digest." In the case of *Jackson* v. *State,* 187 Ark. 1162, 61 S. W. 2d 1113, the rule was thus expressed: "The confession of an accused, accompanied by proof of the commission of the crime, is legally sufficient to sustain a verdict of guilty. *Melton* v. *State,* 43 Ark. 367; *Patterson* v. *State,* 140 Ark. 236, 215 S. W. 629."

In the case at bar it was shown that Lynch, for whose slaying appellant was convicted, came to his death as a result of a blow on his head received on the night of December 4, 1943. Appellant, in his confessions, stated that on this night, shortly before deceased was found lying on the ground unconscious suffering from a crushed skull, he (appellant) after lying in wait to rob Lynch, struck Lynch with a section of iron pipe and that the blow felled Lynch to the ground. The section of pipe used by appellant was found by an officer at the place where appellant said he left it. This evidence established that Lynch had been murdered, and, coupled with appellant's admission that he struck the fatal blow, was sufficient to authorize the jury to find appellant guilty as charged in the information.

## II.

Under this second assignment of error, appellant first argues that the transcript of the confession made by appellant to the Workmen's Compensation Commission was improperly introduced.

Lynch, the slain man, was a night watchman for the Luxora Gin Company and was struck down while making his rounds on the gin premises. A claim against his employer, under the Arkansas Workmen's Compensation Law, based on alleged liability growing out of his death, was filed. This claim was resisted by the employer's insurance carrier, and the attorney for the insurance carrier, in an effort to establish that Lynch's death did not arise from a hazard of his employment, had appellant brought before the Commission as a witness. The record is silent as to whether or not his attendance was procured by subpoena.

At this hearing appellant was questioned by the attorney for the insurance company and by a member of the Commission. Appellant had already made a written confession to Hale Jackson, sheriff of Mississippi county. In answer to questions propounded to him in the hearing before the Commission appellant described the crime in detail. He stated that on the night of the killing he had been paid his wages for the week; that shortly after he was paid he engaged in a "crap" game and lost all of his money; that he went to his employer's store for the purpose of obtaining a loan, but did not find his employer there; that he then armed himself with a piece of iron pipe, hid against the wall inside the gin near a doorway and when Lynch passed him on his rounds he struck Lynch with the pipe; that after Lynch fell he became frightened and fled without robbing him.

Appellant's statement before the Workmen's Compensation Commission was taken down in shorthand and transcribed by a stenographer who introduced it in evidence in the trial below. This stenographer testified that no sort of coercion was exercised on appellant, but that he answered voluntarily and freely all questions propounded to him. As to this confession appellant testified: "Q. Have you been taken care of and not threatened in any manner? A. Yes, sir, I have been taken care of. Q. You have not been threatened or promised anything? A. No, sir. Q. On the day that you went to Blytheville you were told that they wanted to use you as a witness in this claim against the Teaford Gin Company, didn't they? A. Yes, sir. Q. That they wanted to use you as a witness and you volunteered to take the witness stand? A. After they called me up. Q. After they called you up? A. Yes, sir. Q. And you told voluntarily what you later testified to. A. Yes. Q. You volunteered to tell it and you were not threatened? A. No, sir. Q. There was no cussing at the court house, was there? A. No, sir. Q. Nobody cussed you up there? A. Yes, sir. Q. Who was that? A. Mr. Roy. He said not to deny it. Q. You told the Commission exactly what happened, didn't you? A. Yes, sir. Q. You told the Commission just exactly what happened, didn't you? A. Yes, sir."

There is nothing in the record to indicate that appellant made any objection to his being made a witness in the proceeding before the Workmen's Compensation Commission or that any improper means were employed to procure the statement there made by appellant.

In the case of *Shockley* v. *State,* 199 Ark. 159, 133 S. W. 2d 630, the defendant, convicted of manslaughter, complained that the trial court violated the constitutional provision (Art. II, § 8, of the Constitution of 1874) that no man should be compelled to be a witness against himself by permitting his evidence given in a civil case to be read in the trial of Shockley on the homicide charge. Disposing of this contention, this court said: "The testimony the appellant gave in the civil suit was an admission as to how the accident occurred and was an attempted justification of his conduct and actions at the time he ran over the boy. This court said in the case of *Tiner* v. *State,* 110 Ark. 251, 161 S. W. 195, that: 'Evidence of a party's voluntary declarations showing how the alleged crime was committed is admissible against him without regard to whether they were favorable or adverse to his interest at the time of utterance. Such testimony, giving the explanation of the defendant himself as to the transaction, is admissible at the instance of the state no matter whether they were against the defendant's interest at the time he made them or not. . . .' The general rule announced in 16 C. J., § 1255, p. 631, is as follows: 'The admissions which are received against defendant in a criminal prosecution include those which are made by him in civil actions or proceedings, . . .' Moreover, in the instant case, no prejudice resulted to appellant on account of the introduction of his testimony given in the civil case which was introduced in the criminal proceeding for the reason that he made the same statement as to how the accident occurred to a number of witnesses whose testimony was introduced prior to the introduction of the testimony he gave in the civil suit. His testimony in the civil suit was merely cumulative of the statements he had made to others relative to how the accident occurred." The rule is thus stated in 22 C. J. S., "Criminal Law," § 655, p. 1002: "The constitutional right of an

accused not to be compelled to be a witness against himself is not violated by the introduction in evidence of his testimony, voluntarily given in former legal proceedings, as . . . in another court; or at an extrajudicial investigation; or in a civil suit; or in a bankruptcy proceeding. . . . The controlling question is whether the testimony was voluntary, and that must be determined from the facts in each case.''

The statement as to the killing made by appellant before the Workmen's Compensation Commission was practically the same as that made by him in his former confessions. While using against an accused person, in trying him for a crime, his testimony taken in a civil proceeding growing out of the alleged crime, might under some circumstances be an invasion of his legal rights, certainly no prejudice to him could arise where, as in this case, his testimony in the civil proceeding was merely a repetition of statements previously obtained from him properly. We conclude that the statement of appellant made at the hearing before the Workmen's Compensation Commission was properly admitted in evidence.

It is further urged that the court erred in admitting in evidence the transcript of the confession made by appellant while he was in jail at Marion for the reason that said confession was improperly obtained.

The record discloses that appellant first confessed his guilt to Herman Spicer, a deputy sheriff. Appellant was then in jail at Osceola, and he had been, up to that time, denying his guilt and asserting that he was not near the gin at the time the crime was committed. However, when his wife was brought to the jail and she refused to corroborate his statement that he had taken her to the picture show on the night of the murder, appellant told deputy sheriff Spicer that he wanted to tell the truth, and he thereupon made a full confession. He told the deputy sheriff where he had left the piece of pipe with which he struck Mr. Lynch. The deputy sheriff went to the place named by appellant, found the pipe and brought it back to the jail and showed it to appellant, who said it looked like the one he used. Mr. Spicer then called

Sheriff Hale Jackson over the telephone, and was directed by him to take appellant to the jail at Marion.

Sheriff Jackson went to Marion and there in the presence of his deputy and a young lady stenographer and notary public questioned appellant at length in regard to the crime. This statement was taken down in shorthand, transcribed, and read to appellant by the stenographer and signed by appellant (by mark) and witnessed by the sheriff, his deputy and one other person, and a certificate of the notary public attached thereto. The transcript of this statement shows that appellant was duly advised by the sheriff that his statement would be used in court against him. In this confession appellant gave practically the same version of the crime as the one later told by him before the Workmen's Compensation Commission.

In his testimony in circuit court appellant did not assert that he was tortured, beaten, threatened, or physically mistreated in any way by the officers, or that any promise of leniency was made to him, but testified that one or more of the officers "cussed" him and thereby put him in fear. The procedure of the officers in the obtaining of the confession of appellant bears none of the earmarks of "third degree" methods condemned in our decision in the case of *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15. Sheriff Jackson and his deputies, as far as the record in this case discloses, did nothing more than exercise commendable diligence in running down and bringing to justice one who had committed a heinous crime in their bailiwick. The lower court did not err in receiving in evidence the transcript of the confession made in the jail at Marion. *Hooker* v. *State,* 75 Ark. 67, 86 S. W. 846.

It is finally contended by appellant that the verdict was contrary to the law and that the verdict was the result of bias and prejudice. It is not argued that any error was committed by the court in instructing the jury, and we do not find in the record any error prejudicial to appellant. The evidence adduced in the trial abundantly supported the verdict. There is nothing in the rec-

ord that indicates that the verdict was the result of any bias or prejudice on the part of the jury or that the appellant did not receive a fair and impartial trial.

The judgment of the lower court is accordingly affirmed.